IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 320 MOC WCM

| | |
|---|---|
| KIMBERLY BURNETTE, and WILLIAM BURNETTE Plaintiffs, v. RED ROOF INNS, INC., and JAY MOYER, Defendants. | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on Plaintiffs' Motion for Leave to File Amended Complaint (the "Motion to Amend," Doc. 20). Defendants have filed a Memorandum in Opposition, and Plaintiffs have filed a Reply. Docs. 23 & 24.

On April 15, 2020, the undersigned conducted a telephonic hearing on the Motion to Amend. This Memorandum and Recommendation is based on the parties' briefing as well as the arguments presented during that hearing.

I. Background

A. Allegations in the Original Complaint

On September 26, 2019, Plaintiffs Kimberly Burnette and William Burnette ("Plaintiffs") filed a Complaint in state court against Red Roof Inns,

Inc. ("Red Roof Inn") and Jay Moyer ("Moyer") (the "Original Complaint," Doc. 1-1).

In the Original Complaint, Plaintiffs allege that Mrs. Burnette was formerly employed by Red Roof Inn and that, while she was so employed, Dylan Smith ("Smith") made threats against her, her husband (William Burnette), and their family. Doc. 1-1, ¶ 11. Specifically, Plaintiffs allege that on April 16, 2019, Mrs. Burnette was being dropped off for work by Mr. Burnette, that Mr. Burnette approached Smith (who was parked next to Plaintiffs) to have a conversation with him, and that Smith renewed his threats, "including threatening to shoot up the…Burnette's residence," tasered Mr. Burnette, and subsequently battered Mrs. Burnette. Doc. 1-1, ¶¶ 12-13, & 15-16.

Plaintiffs allege that Mrs. Burnette had requested that Red Roof Inn and Moyer, the alleged manager of the specific location where Mrs. Burnette was employed, "take steps to prevent said Dylan Smith from coming on or about Red Roof Inn's property, and if he were to appear on the premises, the police be immediately called." Doc. 1-1, ¶ 11. Plaintiffs assert that "[a]t no time did Red Roof Inn or Moyer attempt to call police or protect Mrs. Burnette and Mr. Burnette" from Smith and that Mrs. Burnette "was subsequently terminated from her employment at Red Roof Inn because of this incident, despite 24 previous years of good service." Doc. 1-1, ¶¶ 17-18. Based on these factual allegations, Plaintiffs assert the following claims in the Original Complaint:

2

(1) Breach of Contract; (2) Wrongful Discharge; (3) Negligent Infliction of Emotional Distress; and (4) Failure to Protect.

### B. Relevant Procedural History

On November 7, 2019, Red Roof Inn filed a Notice of Removal asserting that this court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of North Carolina, Red Roof Inn is a Delaware corporation with its principal place of business in Ohio, and Moyer is a citizen of Tennessee. Doc. 1, ¶ 6.

On November 12, 2019, Plaintiffs filed a Motion to Remand solely based on their position that Red Roof Inn had not established a sufficient amount in controversy. Docs. 2 & 3.

At approximately the same time, Red Roof Inn and Moyer filed motions to dismiss in which Defendants argued that Plaintiffs had failed to adequately plead that the applicable Employee Handbook was a contract under North Carolina law, failed to allege that Mrs. Burnette's termination violated public policy, and failed to allege sufficiently outrageous or extreme conduct to sustain a claim for negligent infliction of emotional distress.

On January 9, 2020, the presiding District Judge, the Honorable Max O. Cogburn, Jr., held a hearing on the Motion to Remand and the Motions to Dismiss. See Doc. 21. Although there was substantial discussion regarding the amount in controversy, Plaintiffs' counsel also raised the prospect of future

amendment of the Complaint to add Smith as well as the employee who was on duty and "took information" from Mrs. Burnette prior to the April 16, 2019 incident.  See Doc. 21, pp. 12:5-13:19; p. 18:1-22; p. 21:8-20.  In discussing the possibility of amendment, Judge Cogburn expressed some surprise that Smith, the alleged assailant, was not already named as a defendant.  Id.

On February 11, 2018, Judge Cogburn denied the Motion to Remand and the Motions to Dismiss.  Doc. 22.  With respect to the Motions to Dismiss, the Court explained, "given the lenient pleading standards of Iqbal and Twombly, the Court will deny the motions to dismiss at this time and hold the matter under consideration pending further development of the record and summary judgment motions."  Doc. 22, p. 6.

### C. The Proposed Amendments

On January 30, 2020 (three weeks after the hearing on the Motion to Remand and Motions to Dismiss but prior to the written Order denying those Motions), Plaintiffs filed their Motion to Amend.  By the proposed Amended Complaint (Doc. 20-1), Plaintiffs seek to add two (2) individuals – Smith and Janeen Kathryn Grondahl ("Grondahl") – as defendants and to add additional factual allegations regarding Smith's threats and his alleged connections to Plaintiffs and Moyer.[1]

---

[1] See Doc. 20-1, ¶ 14 (Smith "interfered with work getting done, he often entered areas of the business that the general public were not allowed, and he demonstrated a mean and angry demeanor towards Mrs. Burnette and other employees."); ¶ 17 ("Smith's behavior towards

4

As discussed above, Smith is the alleged assailant. Plaintiffs allege that Grondahl was employed as the front desk manager at Red Roof Inn and was the employee to whom a specific complaint was made regarding Smith's threatening behavior toward Mrs. Burnette. Doc. 20-1, ¶¶ 5 & 21. Plaintiffs' proposed pleading additionally alleges that Grondahl, who knew of Mrs. Burnette's complaints of Smith's conduct, "demanded that law enforcement arrest Mr. and Mrs. Burnette." Doc. 20-1, ¶ 25.

The proposed Amended Complaint asserts the following claims: (1) Breach of Contract by Mrs. Burnette against Red Roof Inn; (2) Negligence by Mrs. Burnette against Red Roof Inn, Moyer, and Grondahl; (3) Negligence by Mr. Burnette against Red Roof Inn, Moyer, and Grondahl; (4) Assault by Mr. and Mrs. Burnette against Smith; (5) Negligent and/or Intentional Infliction of Emotional Distress by Mrs. Burnette against Red Roof Inn and Moyer; and (6) Civil Conspiracy by Mrs. Burnette against Red Roof Inn, Moyer, and Grondahl.

---

Mrs. Burnette became extremely hostile and the threats more menacing. These new threats included threats to Mrs. Burnette's husband and family."); ¶ 20 ("On April 15, 2019 [i.e., the day prior to the alleged assault set forth in the Original Complaint], Mrs. Burnette was in the laundry room at the Red Roof Inn when the Defendant, Dylan Smith, entered. Smith, without any just reason or excuse, again began harassing and intimidating Mrs. Burnette. When Mrs. Burnette resisted, Smith shoved and assaulted Mrs. Burnette. In a loud, threatening voice, Smith threatened to 'shoot up' Mrs. Burnette's home and proclaimed 'b****, you're fired, Jay is my uncle!' Smith repeated this statement to Mrs. Burnette several times and pointed in her face stating, 'if you were a man, I'd kick you're a**.'"); ¶ 13 ("Smith was dating an employee [of Red Roof Inn], Sylvia Owenby. Owenby is the niece of the [sic] Mr. and Mrs. Burnette and has since, upon information and belief, married the defendant, Dylan Smith.").

5

## II. Law and Analysis

### A. Legal Standard

Both Smith and Grondahl are alleged to be citizens of North Carolina. Doc. 20-1, ¶¶ 4 & 5. During the April 15, 2020 hearing, counsel confirmed that the joinder of either of these individuals would destroy diversity.

"When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e), which provides the district court with two options: … deny joinder, or permit joinder and remand the action to the State court. These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." Mayes v. Rapoport, 198 F.3d 457, 461-462 (4th Cir. 1999).

Whether to permit joinder of a nondiverse defendant under Section 1447(e) "is committed to the sound discretion of the district court…." Id. at 462. In exercising this discretion, the court considers all relevant factors, including "'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.'" Id.

The parties' briefing does not discuss 28 U.S.C. § 1447(e) but instead frames the arguments by reference to Rule 15(a) of the Federal Rules of Civil Procedure, which provides that leave to amend should be freely given when justice so requires. A court considering a Rule 15 motion should be guided "by the general policy embodied in the Federal Rules favoring resolution of cases on their merits." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980), *cert. denied*, 448 U.S. 911 (1980). That is, "in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. the leave sought should as the rules require, be 'freely given.'" Forman v. Davis, 371, U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) (citing Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("Under Rule 15, a 'motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile.'").[2]

---

[2] Defendants also assert that "Smith and Grondahl cannot be joined under Rule 19 simply because their addition could deprive the Court of subject matter jurisdiction." Doc. 23, p. 5. However, the potential joinder of Smith and Grondahl is not analyzed under Rule 19 but

### B. Purpose of the Amendment

Plaintiffs argue that their proposed Amended Complaint "reflects the addition of two parties, who, following additional investigation, appear to be essential (Dylan Smith) and necessary (Janeen Grondahl) to establish corporate liability." Doc. 20, p. 2.

Defendants counter that the timing of the proposed amendment indicates it is being requested solely to defeat subject matter jurisdiction.

In considering whether the purpose of a proposed amendment is to avoid federal jurisdiction, "courts often consider the chronology of events and the timing of the plaintiff's request to add a nondiverse defendant." Boykin v. Spectrum Lubricants Corp., No. 3:13-cv-417-MBS, 2014 WL 12631658, at * 4 (D.S.C. March 7, 2014). "For example, where 'a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction.'" Id. (quoting Mayes, 198 F.3d at 463). "Similarly, courts have suggested caution where 'no attempt was made to add the nondiverse defendant until after removal ... although the relevant facts, as explained, were in the possession of the plaintiffs well before suit was filed.'" Id. (quoting Newman v. Motorola, Inc.,

---

rather pursuant to 28 U.S.C. § 1447(e). See Mayes, 198 F.3d at 462 ("this decision is not controlled by a Rule 19 analysis.").

8

218 F.Supp.2d 783, 787 (D. Md. 2002)). Conversely, courts have "recognized that amendments based on newly discovered information are often sought for legitimate purposes." Id.

Upon removal, Plaintiffs immediately filed a Motion to Remand based on the amount in controversy. Doc. 2. The Motion to Amend then followed a hearing on the Motion to Remand during which the District Judge indicated that absent a stipulation that the damages being sought were less than $75,000, the Motion to Remand would be denied.

Additionally, Plaintiffs knew at the time they filed their Original Complaint that Smith was the alleged assailant and could have included him as an individual defendant. See Smith v. Computer Task Group, Inc., No. 1:06CV00907, 2007 WL 1447699, at * 2 (M.D.N.C. May 10, 2007) ("At the time this action was filed in state court, it appears Mr. Smith knew that actions committed by the proposed individual defendants served as the basis for his action against CTG. Despite this knowledge, Mr. Smith chose not to name the individuals as defendants and did not seek to add them as parties until CTG filed its Notice of Removal. These facts support a finding that the primary purpose of the amendment is to destroy diversity.").

Plaintiffs explain their decision not to include claims against Smith originally, and to request leave to add them at this stage, in two ways. First, they indicate that, had the case remained in state court, discovery would have

9

commenced immediately, and they would have considered naming Smith after depositions had been taken and they knew more information about his involvement. Second, Plaintiffs assert that, at the time the Original Complaint was filed, they were unaware of Smith's familial ties to Moyer but became aware of them through additional investigation. Plaintiffs argue that these familial ties shift the character of Defendants' decision to terminate Mrs. Burnette's employment. Similarly, Plaintiffs state that they did not discover Grondahl's involvement (specifically that she asked the police to arrest Mr. and Mrs. Burnette) until after the filing of the Original Complaint.[3]

Although the timing of the Motion to Amend could militate toward denial, the undersigned finds Plaintiffs' explanation to be plausible and is not persuaded that the proposed amendment is being requested for the purpose of defeating federal subject matter jurisdiction.

### C. Whether Plaintiffs Were Dilatory

Plaintiffs filed their Original Complaint in state court on September 26, 2019. The case was removed on November 7, 2019. Doc. 1-1. Issues joined on February 25, 2020. See Docs. 25 & 26. While formal discovery has not begun, as discussed above, Plaintiffs have known of Smith's identity since the filing of

---

[3] See also Doc. 24, p. 4. ("In the interim between defense counsel's removal and the motions hearing in this case;" Plaintiffs discovered that Smith is a relative of Moyer and that "the front desk manager who was present on the day of the assaults, encouraged the police to arrest the Plaintiffs.").

10

the Original Complaint. Consequently, it would seem that at least with respect to Smith, Plaintiffs were somewhat dilatory in seeking amendment.

### D. Ability to State a Claim

Under the doctrine of fraudulent joinder, "the removing party must show either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) (citations and quotations omitted). The Fourth Circuit has noted that while the doctrine of fraudulent joinder does not directly apply after removal, "if the defendants can carry the heavy burden of proving fraudulent joinder, that fact should be a factor – and perhaps the dispositive factor – that the court considers in deciding whether a plaintiff may join a nondiverse defendant." Mayes, 198 F.3d at 463; see also Woods v. AlliedBarton Security Services, LLC, Civil No. CCB-11-2831, 2012 WL 439694, at * 3 (D. Md. Feb. 9, 2012) (allowing joinder of non-diverse tortfeasor where tortfeasor's employer was previously named as a party and explaining that "[i]n weighing whether the purpose of the amendment is to defeat federal jurisdiction, courts may take into consideration whether the plaintiff has a substantive claim against the party to be joined."); Skeens v. Mutual of Omaha Ins. Co., 2:12-cv-5049, 2013 WL 1584291, at * (S.D. W.Va. April 12, 2013) ("The doubtful viability of Skeens' claims against the Board further indicate that the

11

amendment's purpose is to defeat jurisdiction."); Martin v. Leacock, No. 1:05CV218-DLH, 2005 WL 2587940 (W.D.N.C. Oct. 13, 2005) (allowing joinder of nondiverse defendant where accidents "inextricably intertwined").

Here, Defendants argue that Plaintiffs' proposed amendments would be futile. See Doc. 23, pp. 3-4 ("The proposed Amended Complaint still fails to state any valid cause of action against any current Defendant, and therefore the claims against Red Roof, and Moyer, and Grondal would be subject to another 12(b)(6) motion."); p. 9 ("Simply stated, all of Plaintiffs' proposed claims are meritless and therefore leave to amend would be futile.").

Though these arguments were rejected by Judge Cogburn in the context of the previous Motions to Dismiss, Defendants reiterate them in opposition to the Motion to Amend. See Doc. 23, p. 9 ("Plaintiffs repeat legal theories which Defendants already explained have no viable basis in existing law."); p. 10 ("This ignores settled law, thoroughly explained by Defendant[s] in their Motions to Dismiss, that an employee handbook does not constitute a contract in the state of North Carolina as a matter of law."); p. 17 ("Plaintiffs cannot viably state [either a claim for negligent or intentional infliction of emotional distress], as both claims were addressed by Defendants in their respective briefs [on their Motions to Dismiss]."

Further, Defendants conceded during the April 15, 2020 hearing that Smith and Grondahl would have been properly named as defendants if they

had been named in the Original Complaint. Similarly, during the January 9, 2020 hearing, the District Court agreed that a claim against Smith did not appear to be frivolous. Doc. 21, p. 21:16-17.

### E. Other Considerations

#### 1. Prejudice to Plaintiffs if the Amendment is Not Allowed

In considering possible prejudice to a plaintiff seeking to amend his or her Complaint, courts consider the extent to which the proposed claims are intertwined with claims already in the case and whether a plaintiff could maintain a separate suit against the proposed nondiverse defendant. See Taft v. Siegwerk USA Inc., 1:11cv002, 2011 WL 4459116-MR, at * 3 (W.D.N.C. Sept. 26, 2011) ("The Plaintiffs' argument that having these lawsuits proceed in state and federal court may produce inconsistent verdicts is specious, as these lawsuits involve different defendants and therefore the claims and issues asserted in these lawsuits are not the same."); Graves v. Wells Fargo Bank, N.A., 1:14-cv-398, 2015 WL 12911637, at * 4 (M.D.N.C. June 11, 2015) ("It seems unreasonable to allow Mr. Graves to join a new defendant who defeats diversity when the claims against that new defendant do not overlap or relate to the claims against the existing defendant.").

Here, although Plaintiffs' proposed claims against Smith (for assault) are separate from the claims Plaintiffs are asserting against Red Roof Inn and its employees (arising from the allegedly wrongful termination and failure to

13

protect), the claims against Smith are intertwined. Similarly, Plaintiffs' proposed claims against Grondahl are subsumed within the claims already asserted by Plaintiffs. See Dobbs v. JBC of Norfolk, VA, Inc., 544 F.Supp.2d 496, 500 (E.D. Va. 2008) (allowing amendment to add newly discovered parties and explaining "because these additional defendants were employees of JBC at the time of the events in question, Dobbs has a significant interest in resolving the allegations against them at the same time that the allegations against JBC are resolved."). Considering the relationship of the proposed claims to those already asserted in the Original Complaint, Plaintiffs would be prejudiced if they were required to litigate the proposed claims in a separate state court proceeding.

### 2. Prejudice to Defendants if the Amendment is Allowed

"Careful scrutiny of attempts at post-removal, non-diverse joinder protects the diverse defendant's 'interest in keeping the action in federal court.'" Mayes, 198 F.3d at 463; see also Woods, 2012 WL 439694, at * 4. Here, Red Roof Inn and Moyer have an interest in maintaining their choice of federal forum.

Defendants also assert that allowing the amendment would prejudice them because they previously filed Motions to Dismiss and have incurred additional expenses in addressing Plaintiffs' Motion to Remand.

14

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." Colavita v. Boston Scientific Corp., No. 3:11-cv-585-RJC-DCK, 2012 WL 2577086, at * 4 (W.D.N.C. July 3, 2012) (internal citations and quotations omitted). While Defendants have incurred litigation expenses related to "threshold" motions regarding this Court's subject matter jurisdiction and the sufficiency of Plaintiffs' pleading, this fact does not represent significant prejudice to Defendants, especially as this case is in its early procedural stages and the proposed claims are generally similar to those already asserted in the Original Complaint. See id. (finding no prejudice to defendant where nature of plaintiff's claims did not change from the initial complaint to the proposed amended complaint and the case was at a very early stage of litigation in that no scheduling order was in place, no discovery had been conducted, and no trial date had been set).

### 3. Judicial Efficiency

Courts also consider issues of judicial efficiency and risks arising from parallel litigation when analyzing a request to add a non-diverse defendant. See Woods, 2012 WL 439694, at * 4 ("If plaintiffs are unable to join Mr. Krocheski to this case, they will be free to bring suit against him in state court.

15

Though this reduces somewhat the injury to plaintiffs' interest from a denial of joinder, the result would be the kind of parallel litigation the Fourth Circuit has cautioned against."); Martin, 2005 WL 2587940 (allowing joinder of nondiverse defendant based primarily on concerns of "the possibility of inconsistent results and the enormous costs of litigating the same accident in both federal and state court."); R.B. Jolley v. United Parcel Service, No. 1:06cv357-DLH, 2006 WL 3531621 (W.D.N.C. Dec. 6, 2006) (even though plaintiff knew the identity of the nondiverse defendant prior to removal and court found amendment was for the purpose of defeating jurisdiction, joinder of nondiverse defendant was allowed based on "the potential for inconsistent results, the clear waste of federal and state judicial resources…"); see also Dobbs, 544 F.Supp.2d at 500 n. 12 (noting that removing defendant presumably had an interest in avoiding the dangers of parallel state and federal litigation).

Here, especially considering that this case is in its early stages of development, judicial efficiencies would be gained by allowing Plaintiffs' amendment. Smith's altercation with Plaintiffs is a focal point for all of Plaintiffs' claims against Red Roof Inn and Moyer. Further, Plaintiffs' Amended Complaint alleges that Grondahl was the Red Roof Inn employee to whom Mrs. Burnette reported Smith's threats. Considering the interrelated nature of Plaintiffs' proposed new allegations and claims to those already

asserted in the Original Complaint, requiring Plaintiffs to proceed with a separate state court suit against these non-diverse defendants would introduce the risk of inconsistent results and potentially waste both state and federal judicial resources.

### F. Weighing of the Factors

Factors weighing against allowing the proposed amendment are the timing of the Motion to Amend, Plaintiffs' knowledge of Smith as the alleged assailant at the time the Original Complaint was filed, Plaintiffs' delay in seeking to add Smith as a defendant, and Defendants' interest in maintaining this case in a federal forum. However, considering the early procedural posture of this case, the District Court's previous denial of Defendants' Motions to Dismiss, the connection of the proposed claims to those alleged in the Original Complaint, and issues of judicial efficiency, the undersigned will recommend that the Motion to Amend be allowed.

### III. Defendants' Request for Fees

Defendants assert that the Court should award Defendants' attorneys' fees under 28 U.S.C. § 1927 for "bad faith conduct that wrongfully multiplies proceedings." Doc. 23, p. 20 (quoting Generations Fed. Credit Union, 891 F.3d 508, 520 (4th Cir. 2018)). See 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and

17

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

"Pursuant to § 1927, three substantial requirements must be met before liability may be imposed: (1) a multiplication of proceedings by an attorney; (2) conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings." Collum v. Charlotte-Mecklenburg Bd. Of Educ., 3:07cv534-RJC-DSC, 2010 WL 1838170, at * (W.D.N.C. April 13, 2010) (quoting The Chosin Few, Inc. v. Scott, 209 F.Supp.2d 593, 603 (W.D.N.C. 2002)), *M&R adopted*, 2010 WL 1838091 (W.D.N.C. May 6, 2010).

Here, because the undersigned recommends that the Motion to Amend be granted, the undersigned does not find a basis for considering an award of costs and fees under 28 U.S.C. § 1927.

## IV. Recommendation

As discussed above, 28 U.S.C. § 1447(e) provides only two options: deny joinder, or permit joinder and remand the action to state court. Mayes, 198 F.3d at 462. "[T]he statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." Id.

A motion for leave to amend is not among the motions expressly excluded from direct ruling by a magistrate judge under 28 U.S.C. § 636(b)(1)(A), and a motion to amend has been recognized to be a nondispositive matter. See Steele

18

Case 1:19-cv-00320-MOC-WCM   Document 31   Filed 04/22/20   Page 18 of 20

v. Capital One Home Loans, LLC, 594 Fed.Appx. 215, 216 (4th Cir. 2015) (recognizing a motion to amend as nondispositive); Hughes v. Research Triangle Institute, No. 1:11cv546, 2013 WL 5724522, at * 1, n. 1 (M.D.N.C. Oct. 21, 2013) ("a motion to amend is a nondispositive pretrial matter that the Magistrate Judge does not have to address by recommendation.").

However, as granting Plaintiffs' Motion to Amend here would require, under Mayes, that this matter be remanded, and considering the procedural history of this case, particularly the District Court's ruling on Plaintiffs' previous Motion to Remand, the undersigned believes that the issuance of a recommendation would be more appropriate.

Accordingly, the undersigned recommends:

1. That Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 20) be **GRANTED**;

2. That Defendants' request for fees under 28 U.S.C. § 1927 be **DENIED**; and

3. That this matter be **REMANDED** to the Superior Court of Buncombe County, North Carolina.

Signed: April 22, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).